V. F. WEISER, Appellant, v. MARGARET R. ROSS, Appellee.

**Evidence:** SECONDARY. Oral evidence of the terms and conditions of a will shown to have been executed is secondary and inadmissible.

**Judgments:** PARTIES. It is not necessary in all cases that one be a party to an action to be bound by the judgment.

**Judgments:** PAYMENT: SATISFACTION OF DEBT. The payment of a judgment upon notes, under a contract by which defendant agreed to assume a co-obligation on the notes, amounts to a satisfaction of the notes.

**Contracts:** WHO MAY SUE THEREON. A contract whereby defendant, as in this case, assumed plaintiff's co-obligation on certain notes having been made for their benefit, the payees could sue thereon.

**Judgments:** CONCLUSIVENESS: PRIVITY. As a general rule one not a party to a suit is not bound thereby; nor can he take advantage thereof. But this rule does not apply in case he is in privity with either of the parties thereto, in which event he is bound by the judgment. Thus, as in this action, a judgment against defendant on notes, which, under a contract with a co-obligor defendant had assumed, precludes subsequent recovery against the co-obligor.

*Appeal from Buchanan District Court.*—HON. F. C. PLATT, Judge.

THURSDAY, MARCH 9, 1911.

THE questions for our consideration arise out of a counterclaim filed by defendant against plaintiff upon two promissory notes of $500 each, executed by plaintiff and

three others, payable to E. Ross or bearer, dated December 10, 1885, each due four years after date. Defendant claimed to be the owner of these notes, and asked judgment for the amount thereof against the plaintiff. Plaintiff admitted the execution of the notes, but denied defendant's ownership thereof. He also pleaded a settlement, payment of the notes, and also an estoppel and an adjudication of nonliability, which will be more particularly referred to in the opinion. Upon these issues the case went to trial to a jury, resulting in a directed verdict for defendant, and plaintiff appeals.—*Reversed.*

*E. E. Hasner* and *Horace E. Trippet,* for appellant.

*Cook & Cook,* for appellee.

DEEMER, J.—We shall have some difficulty in stating the case with that clearness which is desirable. The execution of the notes being admitted, but defendant's ownership thereof denied, it was incumbent on defendant to make at least a prima facie showing of ownership. She claims to have obtained title thereto by inheritance from her husband, E. Ross, the original payee of the notes, and in virtue of an assignment from her son Park, the only other survivor of her deceased husband. The notes were never treated as part of E. Ross' estate, never inventoried by his executrix, or disposed of by him; but defendant claims that they belonged to him at the time of his death, and as administration of his estate has been closed she and her son Park acquired title through inheritance. This is denied by plaintiff, who insists that the notes were no part of the assets of the estate of E. Ross, that they have been paid or settled, and that defendant is estopped by contract, judgment, and otherwise from insisting upon payment of the notes. It appears that E. Ross died in January of the year 1891. At the time of his death he and plaintiff were

partners, conducting a milling business under the name of V. F. Weiser & Co.

On March 13th of the same year plaintiff and defendant entered into a written contract, the material parts of which read as follows:

Whereas, the said V. F. Weiser and E. Ross heretofore entered into a copartnership to operate the Otterville mill in said county under the firm name of V. F. Weiser & Co., which copartnership has continued by mutual consent and agreement until the present date, and whereas the death of E. Ross necessarily terminated said copartnership: Now, then, it is agreed by the parties thereto to settle all matters connected with said partnership in manner and form as follows, to wit: First, that V. F. Weiser, partner as aforesaid, agrees to go out and surrender and hand over to the said Margaret R. Ross, executrix as aforesaid, said mill and all therein to this date, both manufactured product and raw material of all kinds held for products, and all books of account, bills, memoranda and papers of all kinds in any way relating to the business of said mill during the copartnership, with all value thereof as the said books and bills on true balance may show, and further, the said V. F. Weiser, partner as aforesaid, agrees to leave for the use of the mill the machine or device known as the diamond mill stone dresser, and also the boat used on the pond for repairing the mill dam and other use on or about the water, and also the said V. F. Weiser agrees to convey by full and sufficient warranty deed to the said Margaret R. Ross for the use of the mill property that piece and parcel of land between the mill and the bridge and known as lot B in the village of Otterville (said last three items, to wit: The diamond mill stone dresser, boat and village lot being the individual property of said V. F. Weiser). Second: Margaret R. Ross, executrix aforesaid, agrees, on her part, to take care of and pay all papers or notes made and executed by the said V. F. Weiser & Co. for repairs or extension of mill and for running expenses of same now held by the People's National Bank, and surrender to said V. F. Weiser certain notes now held by the estate of E. Ross, to wit: One dated September 4, 1888, for $500, made by

V. F. Weiser and V. F. Weiser & Co., one dated April 4, 1888, for $1,000, made by V. F. Weiser and V. F. Weiser & Co., to wit: One dated May 15, 1887, for $750, made by V. F. Weiser and Andrew Weiser. Of the above-described notes it is agreed by the parties hereto that, in lieu of surrender, all notes made and executed by and in the name of V. F. Weiser & Co. shall be destroyed in the presence of both parties and generally all notes heretofore made in the course of the copartnership and paid or substituted by other notes and lying in the People's Bank or among the papers of Mr. Ross shall likewise be destroyed in the presence of the parties hereto; and further, with respect to two certain notes for $500 each, dated December 10, 1885, and payable to E. Ross or bearer and signed by V. F. Weiser, Andrew Weiser, Martin A. Weiser, and Anton Weiser, one held by Martha S. Clark and the other by J. M. Ensminger, it is agreed by the parties hereto that if said notes are lawfully filed and proved against V. F. Weiser & Co. and the estate of E. Ross, deceased partner of the milling firm of V. F. Weiser & Co., then the said Margaret R. Ross, executrix aforesaid, will pay the same; and, further, one certain note dated June 9, 1890, for $140, and signed by V. F. Weiser and W. Hullerman, and held by the People's Bank, the said Margaret R. Ross, executrix as aforesaid, agrees to assume and pay the same, and in consideration of the above and for any other claim the said V. F. Weiser may have for work done or material furnished either by himself or family or others at his solicitation for the partnership during its existence the said Margaret R. Ross agrees to pay and does pay the said V. F. Weiser the sum of one hundred twenty-five dollars, the receipt whereof is acknowledged by the said V. F. Weiser as receipt in full for all claims against the said company or the estate of the said E. Ross. With respect to the financial matters of the company, said V. F. Weiser alleges that it has always and at all times been in the hands of Mr. Ross and that he has made and executed no papers or notes of any amount whatever binding the company except at the demand of Mr. Ross.

The $500 notes mentioned in this contract as held by Martha Clark and J. M. Ensminger are the ones upon

which the counterclaim in this action is based. Thereafter
and some time in the year 1892, Ensminger and Clark each
brought an action in the district court of Buchanan County
against the defendant in this action upon the contract
just quoted, in which they each alleged, among other things,
the partnership relation between Weiser and Ross; that
defendant took possession of all the partnership property
after the death of her husband and all his individual
property; that by the terms of the contract said defendant
assumed and agreed to pay the notes now in suit, then
held by the said Ensminger and Clark as part considera-
tion for the property turned over to her by V. F. Weiser
under the contract. They further alleged that they each
furnished money to the partnership, and that, while the
notes in suit were given as an accommodation for the
firm of Weiser & Co., they were given to Ensminger and
Clark, respectively, as evidence of the loan made to the
copartnership, to be held as evidence of the copartnership
indebtedness. They also alleged that the notes were given
to raise money for the partnership business of Weiser &
Co., and that the money furnished by them was for the
copartnership, and that the copartnership gave them the
notes sued on in this action some time in the year 1886, to
evidence the amount of the indebtedness. They further
alleged that defendant came into the possession of all the
property of the copartnership, and also all that belonged
to her husband, and had converted the same to her own
use. Judgment was asked in each case for the amount of
the notes.

Defendant in the suit answered the petitions in the
Ensminger and Clark cases. She denied that there was
any partnership between her husband and Weiser after
November 1, 1889, but admitted that she took possession
of the mill and held it until it was sold. She admitted
taking possession of all the mill property, but that it was
not worth to exceed $5,082, and that claims against the

estate of her husband to the amount of more than $8,000 exclusive of those held by Ensminger and Clark, had been filed with her as executrix. She also averred that neither Ensminger nor Clark had established their claims against her husband's estate, but that, on the contrary, they had been defeated in their attempts to do so. As to the second count of the petitions, she admitted the receipt of the property, and alleged that she had fully accounted for the same, and that the claims of Ensminger and Clark had been adjudged to be nonenforceable against her as executrix of the estate. Upon these issues the two cases were tried, resulting in judgments against defendant Ross, the following being the form of each of said judgments:

On this 20th day of May, 1893, this cause comes on for decision, Messrs. Woodward & Cook appearing for plaintiff, and Messrs. Lake & Harmon appearing for defendant, and the court being fully advised in the premises, finds that the issues are with the plaintiff and against the defendant, and that there is due the plaintiff from the defendant, Margaret R. Ross, on the contract set forth in the petition herein, the sum of six hundred three and thirty-three hundredths dollars. It is therefore ordered and adjudged that the plaintiff, J. M. Ensminger, have and recover of defendant, Margaret R. Ross, the said sum of six hundred three and thirty-three hundredths dollars, with interest at the rate of six percent per annum from date until paid, and the costs of this action taxed at twelve and fifty one hundredths dollars, and that execution issue therefor.

Each case was appealed to this court, and the judgments were each affirmed. See 96 Iowa, 402. After the affirmance defendant paid each of said judgments, and in November of the year 1907 filed her counterclaim upon each of the original $500 notes, claiming, as we understand it, that the notes were simply deposited by her husband as collateral security for a loan to the partnership of which he was a member, and that upon payment of

the indebtedness which the notes ᴠwere made to secure the original payee, her husband, or in event of his death, his heirs, became entitled to the notes, and that she, under the facts before recited, is entitled to recover thereon from the original makers.

I.    In order to establish her ownership of the notes, defendant was permitted to testify that her husband left a will, and this followed: "Q. What were the terms of the will? (Plaintiff objects to that as not the best evidence.)    Q. To whom was the property left, Mrs. Ross?    A. Myself and son."    Manifestly the testimony as to the contents of the will was secondary and incompetent, and as this is the only evidence in support of her allegation of heirship, and the testimony itself shows that the husband left a will, defendant has not shown her ownership of the note, and in any event the judgment must be reversed.

I. EVIDENCE:
secondary.

II.    Testimony was adduced, over the plaintiff's objections to the effect that Ensminger held one of the notes in suit simply as collateral security for a loan to Ross, and that he did not own the note.    However, this same witness said that he paid Ross $531 and some cents for the note, and held it for a number of years.    He also said that he produced the note in court when he had his trial against defendant, and had not had it since that time.    Defendant also adduced testimony to show that plaintiff Weiser was owing a bank in Independence, and that on December 31, 1885, there was paid on this note $500 by check of M. S. Clark to E. Ross for that amount, and again on September 25, 1886, the further sum of $531.67 by check of J. M. Ensminger to E. Ross, and that the note upon which those payments were made was the individual debt of V. F. Weiser.    Testimony was also adduced by defendant showing that the Ensminger and Clark claims were filed in probate against the Ross estate and after hearing were disallowed.    The evidence shows that the notes in suit were

used in various cases in the district court and that they were never out of the possession of the clerk of that court, except as they were delivered upon receipt to defendant's attorneys. Defendant also produced testimony to show that Mrs. Clark held one of the notes in suit simply as collateral. This is the entire record so far as it is material to any propositions in the case.

Appellant contends (1) that the notes have been paid, and that no action will lie thereon; (2) that it has already been adjudicated that defendant was liable to pay the notes; that she has done so and is not entitled to recover thereon from plaintiff; (3) that the judgments in the Ensminger and Clark cases were final and conclusive, and that the effect thereof was to discharge plaintiff from any liability on the notes.

The main question on the merits of the case is the effect of the judgments rendered in the Ensminger and Clark cases. Those actions were in part based upon the contract

2. JUDGMENTS: parties.

between plaintiff and defendant, which we have hitherto quoted, and the judgments rendered thereon conclusively establish the fact that defendant was liable thereon. The plaintiff here was not a party to that suit; but one need not always be a party to a judgment in order that he may be bound thereby.

The relevant part of the contract, aside from its recitals, which recitals give color to the entire instrument, is embodied in this language: "And further, with respect

3. JUDGMENTS: payment: satisfaction of debt.

to certain notes for $500 each, dated December 10, 1885, and payable to E. Ross or bearer and signed by V. F. Weiser, Andrew Weiser, Martin A. Weiser, and Anton Weiser, one held by Martha S. Clark and the other by J. M. Ensminger, it is agreed by the parties hereto that if said notes are lawfully filed and proved against V. F. Weiser & Co. and the estate of E. Ross, deceased partner of the milling firm of V. F. Weiser & Co., then the said Margaret R. Ross, executrix

aforesaid, will pay the same." This contract was made by plaintiff and defendant, and it was also for the benefit of Ensminger and Clark. Upon this part of the contract their suits were bottomed, and upon it they recovered. It is manifest that the judgments in those cases amounted to an adjudication that defendant herein was liable, and that she should pay these identical notes, and not some other supposed indebtedness. The contract was made for the very purpose of settling the question as to which one, plaintiff or defendant, should pay these identical notes now in suit. Nothing in the contract indicates that it was some other debt for which these notes were held as collateral. On the contrary, the identical notes are described, and by the contract defendant agreed to pay them under certain conditions. In the Ensminger and Clark cases, which were upon this contract, the court expressly held that defendant should pay the notes, and judgment was rendered accordingly, which was afterwards paid. This, as it seems to us, amounted to a satisfaction of the notes, and thereafter no action could be predicated thereon against the plaintiff. *Harrah v. Jacobs,* 75 Iowa, 72; *Harvey v. Tama County,* 53 Iowa, 228; *Leavitt v. Morrow,* 6 Ohio St., 72 (67 Am. Dec., 334); *Wilson v. Brown,* 13 N. J. Eq., 277; *Gammon v. Kentner,* 55 Iowa, 508.

It goes without saying, of course, that Clark and Ensminger could sue upon the contract, as it was made for their benefit. *Roberts v. Corbin,* 26 Iowa, 315; *Beeson v. Green,* 103 Iowa, 406. Doubtless plaintiff might have brought suit upon this contract also, but as it was for the benefit of Clark and Ensminger, although not made in their names, they could sue. *Knott v. Railroad Co.,* 84 Iowa, 462.

4. CONTRACTS: who may sue thereon.

What effect, then, should be given the judgments in the Clark and Ensminger cases, plaintiff not being a party to the actions? The question seems to have puzzled the trial court, and there appear to be no cases exactly in

point. Of course, one not a party to an action is as a
rule not bound thereby, nor can he take any
advantage thereof; but if he is in privity to
either of the parties, he is bound, and may
also take advantage thereof. We are constrained to hold that
plaintiff herein was in privity to Clark and Ensminger,
and that the judgments rendered in their actions were con-
clusive, not only upon the defendant therein, but that plain-
tiff may as a privy take advantage thereof. It is only
by reason of privity that Clark and Ensminger might sue.
This privity is created by law, but it is no less effective
than if it had been created by contract. In principle the
case in this respect is ruled by *Knott v. Railroad Co.,* 84
Iowa, 462, wherein we said:

The right of the plaintiff to sue upon the agreement
set out in his petition is questioned upon the ground that
he was not a party nor privy to the agreement. The right
of a third person to sue upon a contract made in his favor
has been the subject of much discussion and many diverse
decisions. The general tendency of the cases is towards a
recognition of the right, and in many of the states it is
fully recognized. The cases are quite fully cited in an able
article upon the subject in 15 American Law Review, 231.
*Johnson v. Collins,* 14 Iowa, 64, settled the question in this
state in favor of the right of a third person to sue upon a
contract made in his favor. In that case the petition show-
ed that one Freyberger gave money to the defendant, which
the defendant promised and agreed with Freyberger to de-
liver to the plaintiff, but failed and refused to do so. The
defendant demurred upon the ground that there was no
privity of contract between the plaintiff and the defendant,
and no consideration for the promise of the defendant.
This court said: 'It seems to us that the authorities, and
especially the later ones, are all one way on this question,
and these authorities are unquestionably founded upon the
soundest reasoning and well-settled principles of justice
and good conscience when they recognize the right to
maintain this action.' It is held that the law creates the
privity, and that because the plaintiff could sue Freyberger

5. JUDGMENTS:
conclusive-
ness: priv-
ity.

was no argument to defeat his action against the defendant; that 'the law operates upon the acts of the parties, creates the duty, establishes the privity, and implies the promise and obligation upon which the action is founded.' It is further said: 'If the consideration moves from a third person—the stranger, even—and if adopted by the plaintiff, it is sufficient. The stranger, though not before the agent of the plaintiff, becomes so after such disposition, so far as to make valid the consideration.' We see no distinction in principle between the cases, and therefore hold that the plaintiff had a right to sue upon the contract set out in the petition.

One may be a privy by contract, by estate, by blood, or in law, and for present purposes it is immaterial how that privity came to exist. As already observed, it did exist, and plaintiff may take advantage thereof. The contract between the parties was made to settle the very matter now in controversy, and that contract has now been enforced by judgment. The conclusion, then, is final and can not be relitigated in this proceeding. , *Southern Pac. R. R. v. United States,* 168 U. S., 1 (18 Sup. Ct. 18, 42 L. Ed., 355); *Beh v. Bay,* 127 Iowa, 246, lend support to these conclusions. See also, *Scott v. Hall,* 60 N. J. Eq. 451 (46 Atl., 611); *Larum v. Wilmer,* 35 Iowa, 244. We do not refer to the many cases cited by appellee's counsel, for none of them seem to be controlling.

For the errors pointed out, the judgment must be, and it is, *reversed.*