**ALLISON-BRISTOW COMMUNITY SCHOOL DISTRICT, Petitioner,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Respondent,**

and

**Bernard W. Rowland, Intervenor–Appellant,**

and concerning, **Willow Tree Investments Inc., Garnishor–Appellee.**

No. 89–1601.

Supreme Court of Iowa.

Oct. 17, 1990.

Reed H. Reitz and James D. Lohman of Reimer, Lohman & Reitz, Denison, for intervenor-appellant.

William A. Eddy and Paul A. Zoss of Adams, Howe & Zoss, P.C., Des Moines, for garnishor-appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

In this appeal the issue is whether back pay and interest awarded to an employee in a civil rights action qualifies as personal earnings which are exempt from garnishment by a judgment creditor under Iowa Code section 642.21 (1989).[1] The district court held that back pay and interest on the award were not exempt under section 642.21 and could be garnished by a judgment creditor. We hold that the exemption applies to the back pay, but not to the interest.

In 1981, Bernard W. Rowland filed a civil rights complaint against his employer for unlawful discrimination in terminating his employment. The Civil Rights Commission held in favor of Rowland and ordered the employer to pay him $65,377, less appropriate deductions for federal and state income taxes and social security. It further ordered that attorney fees and interest be paid by the employer. On April 26, 1989, following appeals, the employer filed a sat-

---

1. This section governing exemption from net earnings provides in pertinent part:

    1. The disposable earnings of an individual are exempt from garnishment to the extent provided by the federal Consumer Credit Protection Act, Title III, 15 U.S.C. secs. 1671–1677 (1982). The maximum amount of an employee's earnings which may be garnished during any one calendar year is two hundred fifty dollars for each judgment creditor, except as provided in chapter 252D and sections 598.22, 598.23, and 627.12, or when those earnings are reasonably expected to be in excess of twelve thousand dollars for that calendar year as determined from the answers taken by the sheriff or by the court pursuant to section 642.5, subsection 4. When the employee's earnings are reasonably expected to be more than twelve thousand dollars the maximum amount of those earnings which may be garnished during a calendar year for each creditor is as follows:

    ....

    e. Employees with expected earnings of fifty thousand dollars or more, not more than ten percent of an employee's expected earnings.

    ....

    3. For the purpose of this section:

    a. The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

isfaction of judgment and deposited money for payment of the judgment with the clerk of the district court. It is agreed by the parties that the tax withholdings amounted to $19,838 and that the net back-pay award plus interest amounted to $80,248.

In independent actions, Willow Tree Investment Co. (Willow Tree) obtained judgments against Rowland in state and federal courts. It caused a writ of execution to be issued and garnished the clerk of court for the funds held on behalf of Rowland for back pay and interest. On June 9, 1989, Rowland received notice of the garnishment and promptly resisted, claiming that the funds deposited for back pay and interest were personal earnings which fell within the exemption contained in section 642.-21. The district court allowed the garnishment.

In enacting section 642.21, the legislature provided protection from garnishment of an employee's earnings. First, the section adopts the federal Consumer Credit Protection Act, title III, 15 U.S.C. sections 1671–1677 (1982); however, the federal Act is not an issue in this case. Second, section 642.21 goes beyond the federal Act by setting the maximum amount of an employee's earnings which may be garnished by each creditor during any calendar year. Iowa Code § 642.21(1). The maximum amount is ascertained by application of a sliding scale based on the expected annual income. *Id.*

For an employee with expected earnings of $50,000 or more, the maximum amount that can be garnished is ten percent of the employee's expected earnings. Iowa Code § 642.21(1)(e). Rowland claims that his earnings fall within the section 642.21(1)(e) category and that Willow Tree is only entitled to garnish ten percent of the back-pay-and-interest funds held by the clerk. The district court found that the funds held for Rowland's judgment did not qualify as earnings under section 642.21.

I. *Earnings.* Throughout this appeal the underlying issue is whether the civil rights award of back pay qualifies as earnings that fall within the exemption in section 642.21. This section defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise...." Iowa Code § 642.21(3)(a). The district court relied upon federal cases interpreting the federal Consumer Credit Protection Act and upon language in *MidAmerica Savings Bank v. Miehe,* 438 N.W.2d 837, 839–40 (Iowa 1989), in concluding that the purpose of this legislation is to facilitate an employee's payment of living expenses and support. We agree with this broad assertion of purpose, but cannot agree with the district court's next conclusion.

The district court concluded that the legislature did not intend an amount subsequently received for back pay to be exempt earnings. It reasoned that the back pay was received too late to allow an employee to apply it toward day-to-day living expenses incurred during the time period when the back wages were earned. This conclusion ignores the fact that Rowland had living expenses during the period he was wrongfully unemployed. Exemption laws are to be liberally construed to allow debtors and their families assurance that necessary living expenses can be covered. *Sterman v. Hann,* 160 Iowa 356, 358, 141 N.W. 934, 934 (1913). Rowland should be in a position to use the judgment in his favor to replenish the source from which his living expenses were paid during the period he was deprived of earnings. In other words, a judgment creditor should not gain an advantage caused by the wrongful acts of an employer.

Willow Tree urges that the underlying intent of the exemption section is to provide a continuing means of support for a debtor. Willow Tree emphasizes that the Supreme Court found that the legislative intent behind passage of the federal Consumer Credit Protection Act was to prevent personal bankruptcy filings, to preserve a debtor's employment, and to provide an ongoing means of support for a debtor and his family. *Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 382 (1974). We concede that one of the purposes of the federal Act is to ensure

a continued means of support for the debtor. In this case, however, the exemption is derived from the additional protection given the debtor under state law. Our state law determines the amount of the exemption on the basis of an individual's expected annual income. This method of annual calculation is less attuned to provide a continued means of support for a debtor than the federal Act, which calculates the amount of disposable income that can be garnished on a weekly basis. *See* 15 U.S.C. § 1673 (1982).

The purpose and construction of Iowa's statutory earnings exemption must be examined in light of the purpose and remedies provided in Iowa's civil rights chapter. Consideration of the relevant Iowa legislation as a whole demands a broader view than the trial court's narrow focus upon an exemption that is conditioned only on the payment of current living expenses. We believe the more appropriate focus should be upon the true nature of the award in question to determine if it falls within the term "earnings" as defined in section 642.-21. A civil rights award is unlike a damage award in a typical contract or tort action. The underlying purpose of allowing damages in a civil rights award is compensation for the injury sustained. *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 420 (Iowa 1983); *Schiltz v. Cullen–Schiltz & Assocs., Inc.*, 228 N.W.2d 10, 20 (Iowa 1975). In civil rights actions, the legislature gave the courts power to provide a wide variety of relief, most of which is equitable in nature. *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 384 (Iowa 1990). In unfair employment practices remedial action includes "[h]iring, reinstatement or upgrading of employees with or without pay...." Iowa Code § 601A.15(8)(a)(1). Although part of a civil rights award may be compensation, the real purpose behind a civil rights award is to make the person whole for an injury suffered as a result of unlawful employment discrimination.

■ In this case, the award not only allowed back pay, but also required the employer to pay the tax withholdings to place the employee in the same position he would have occupied if the wages were received during the period of wrongful discharge. Under these circumstances, we conclude that the judgment entered in Rowland's favor for back pay is an award of earnings paid for personal services as defined in subsection 642.21(3)(a).

■ Willow Tree advances an alternate justification for the district court's holding. It claims that Rowland's award of back wages was extinguished and replaced by a judgment debt. Thus, it urges that the back-pay award lost its character as wages and may be garnished as any other judgment. It cites *Stephen O. Cook v. Valentine W. Holbrook*, 88 Mass. (6 Allen) 572, 573 (1863), for the proposition that a claim for wages merges into a judgment and becomes a separate and distinct debt losing its character as wages. It also argues that our language in *Chader v. Wilkins*, 226 Iowa 417, 422, 284 N.W. 183, 186 (1939), supports the proposition that a judgment is a debt regardless of the nature of the original cause of action.

We cannot agree that the entry of a judgment for back pay resulted in Rowland's losing the exemption provided in section 642.21. *Cook* is distinguishable from this case because the creditor sought to garnish a fund arising from a judgment that was held by an attorney. *Cook*, 88 Mass. (6 Allen) at 572. Likewise, our decision in *Chader* is not controlling. The language in *Chader* does not persuade us to determine that a judgment extinguishes the entire character of the original claim. *Chader*, 226 Iowa at 421–22, 284 N.W. at 186. More important, we believe that stronger authority can be found in those cases holding that an employee's wages remain exempt when he sues an employer and recovers a judgment. *See Cox v. Bearden*, 84 Ga. 304, 307–08, 10 S.E. 627, 628 (1890); *Warner v. Willard*, 115 Okl. 224, 227, 242 P. 550, 553 (1925). We believe that these cases are more consistent with the purposes of Iowa's exemption and civil rights statutes.

■ We do not agree that Willow Tree's judgment extinguished the exemp-

tion by operation of the doctrine of merger. "The doctrine of merger is an aspect of res judicata which prevents relitigation of existing judgments [and] has the effect of issue preclusion." *Brenton State Bank v. Tiffany*, 440 N.W.2d 583, 586 (Iowa 1989). It is intended to prevent excessive litigation between parties and is limited by concerns of justice. *Id.* at 586. However, this case is not a situation of relitigation of an issue already decided. Neither do we believe that one who is not a party to the suit may claim the benefits of merger. *See Weiser v. Ross*, 150 Iowa 353, 362, 130 N.W. 387, 390 (1911). Finally, we do not accept the contention that the judgment in this case extinguished the character of the award as wages. "When by reason of [Rowland] obtaining judgment upon a claim the original [civil rights] claim is extinguished and rights arise upon the judgment, *advantages to which [Rowland] was entitled with respect to the original [civil rights] claim may still be preserved despite the judgment.*" (emphasis added). Restatement (Second) of Judgments § 18 comment g (1982). We believe that the purposes of the applicable statutes discussed previously demand preservation of an award for back pay as "earnings" within the meaning of section 642.21 even after a judgment has been rendered upon the back pay. For these reasons we believe that the reduction of Rowland's wage claim to judgment does not cause him to lose the earnings exemption in section 642.21.

 Willow Tree also urges that time has destroyed the exempt character of the wages. It cites our decision in *Miehe*, 438 N.W.2d at 839–40, for authority that the exemption only lasts for a ninety-day period after the wages are paid if the wages can be traced to a checking or savings account in a financial institution. In this case, the funds have not been transferred to Rowland nor has he exercised any control over the funds. He has not been permitted "a reasonable opportunity to negotiate the paycheck [earnings represented by the judgment] and spend the fund." *Miehe*, 438 N.W.2d at 839. Under these circumstances it would be premature to establish a ninety-day limit as we did in *Miehe*.

■ II. *Interest.* We address Rowland's claim that he is entitled to an exemption in the interest due on the judgment for back pay wages. He urges that the interest should be construed as "earnings" for the purposes of section 642.21. We do not agree. Interest is allowed for the use of money or as damages for its detention. *Weinrich v. Hawley*, 236 Iowa 652, 659, 19 N.W.2d 665, 669 (1945). Interest is not compensation for personal services as defined in subsection (3)(a). We hold that the interest is not exempt under section 642.21.

III. *Conclusion.* In summary, we hold that the amount of Rowland's judgment against his employer for back pay is exempt earnings under section 642.21, but that the amount awarded for interest on the judgment is not exempt. We remand for the district court to determine the amount of the exemption and render judgment accordingly.

AFFIRMED IN PART AND REVERSED IN PART.