DELIA B. GOLDEN, EXECUTRIX OF THE ESTATE OF ELIZABETH B. GOLDEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FIDELITY TRUST COMPANY, CO-EXECUTOR OF THE ESTATE OF CHARLES E. GOLDEN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLAYTON W. ANDERSON AND MELFORD J. ANDERSON, EXECUTORS OF THE ESTATE OF E. V. ANDERSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 91451, 91452, 91453, 92621. Promulgated April 5, 1939.

*A. G. Wallerstedt, C. P. A.*, and *Robert L. Kirkpatrick, Esq.*, for the petitioners.

*Loren P. Oakes, Esq.*, for the respondent.

### OPINION.

HILL: The petitioners plead the benefits of subdivision (b) (1) of section 22 of the Revenue Act of 1934, which excludes from a taxpayer's gross income amounts received under a life insurance contract paid by reason of the death of the insured. They claim that the payments here in dispute were amounts received by these recipients within such exemption provisions.

It is respondent's contention that the disputed disbursements were made from corporation surplus accumulated, in part, from investments of corporate earnings in life insurance policies. That the corporation made such investments from its surplus in the first instance can not be disputed. The parties also agree that the corporation, at all times here material, had ample earnings from which it could have distributed dividends, equal to the sums here involved, to its stockholders had it seen fit to do so. In the absence of any showing as to what part, if any, of such surplus was earned before March 1, 1913, the admitted facts would make these distributions dividends, if they belonged to the corporation's surplus when disbursed. *Isaac May*, 20 B. T. A. 282.

The petitioners contend that the funds here did not belong to the corporation when distributed, but that they belonged to the corporation's stockholders by virtue of an irrevocable trust. The same claim was made in *Edwin Lindsey Cummings*, 28 B. T. A. 1045, where it was contended that a corporation collected and distributed the proceeds of life insurance to its stockholders as their trustee and not as owner of the funds. There, the distribution was made pursuant to a prearranged plan, as in this case, which had been agreed to by the stockholders and ratified by the board of directors in a resolution which committed the board to the duty of distributing the proceeds "if and when" collected as "dividends" to the stockholders of record. The petitioners claimed that the effect there was to divest the corporation of all interest in the policies and create a trust in favor of the stockholders, and that the board's resolution committing it to the single duty of collecting and distributing the insurance among the stockholders made the corporation a bare trustee for that sole function. We found against that contention and our decision was affirmed in *Cummings* v. *Commissioner*, 73 Fed. (2d) 477. The petitioners do not question the correctness of that decision, but contend that certain language in the court's opinion in the *Cummings* case supports the view that in the instant case the distributions in question are exempt from tax in the hands of the stockholders. The language referred to is as follows:

\* \* \* This intention could have been fulfilled in two ways: (1) *By taking out the policies in the name of the company as trustee for such stockholders, in which case there would be no question but the amounts received by the petitioners were received under the life insurance contracts;* or (2) by a contract or undertaking on the part of the company that these proceeds should be paid to them, not by reason of their interests in the life insurance contracts, but by reason of their interests in the company as stockholders and as a distribution of a part of its surplus, in which case the amounts so distributed would be taxable to the receivers thereof. [Italics supplied.]

The petitioners contend that the corporation's acts in transferring beneficial rights in these policies to the trustee herein meet the condition or plan first stated in the above quotation and bring their distributions under the tax exempt classification suggested by the court.

We are unable to see the parallel the petitioners suggest. Here all policies were taken out in behalf of the corporation, and paid for by it out of earnings. The investment in the policies was a corporation asset which it could not gratuitously dispose of, or legally distribute to, its stockholders except by the process of dividends. Cook on Corporations, sec. 534; *Gibbons* v. *Mahon*, 136 U. S. 549; *Sabre* v. *Union Traction & Electric Co.*, 225 Fed. 601. The naming of a trustee for the policies in this case did not dispose of the corporation's interests in them, as the specific reservations set out in the so-called "trust agreement" clearly show. *Old Point National Bank, Executor*, 39 B. T. A. 343. It is also obvious that the endorsements affixed to the policies fall far short of vesting their titles in the trustee, much less as trustee for the stockholders. True, the two Penn Mutual policies were assigned outright to "Fidelity Title and Trust Company, Trustee," but without words creating any trust, or designating any beneficiaries. Under such conveyances, the title of the trustee is held merely in a custodial capacity for the transferor. *Prudential Insurance Co. of America* v. *Bloomfield Trust Co.*, 104 N. J. Eq. 372; 145 Atl. 735; *Sanford* v. *Van Pelt*, 314 Mo. 175; 282 S. W. 1022. Endorsements on the remaining policies make no pretense of intending a transfer of the policies themselves to the trustee. The one policy issued by the National Life Insurance Co. carries that company's "rider" announcing that *the proceeds will be paid to the trustee*, subject, however, to the corporation's right to change beneficiaries from time to time by notice to it. To the same effect and import are the insurance company's "riders" on all policies issued by the Prudential Insurance Co.

The reservation by the corporation of valuable property rights in all of these policies negatives petitioners' claims that they were irrevocably assigned to the trustee. A completed assignment of choses in action leaves no interest or control, however small, in the assignor which could prejudice or defeat the right of the assignee. 5 C. J. 959;

*Welch* v. *Mandeville*, 1 Wheat. 233; *Chase & Baker Co.* v. *National Trust & Credit Co.*, 215 Fed. 633; *Greenville Savings Bank* v. *Lawrence*, 76 Fed. 545. Nor do we think the parties to these transactions intended a transfer of the corporation's interests in these policies. The fact that the corporation continued payments of the premiums until the insured died is inconsistent with such theory. We are convinced that the mechanics here employed were only intended to make certain an immediate distribution upon the death of the insured of the proceeds of the policies among such stockholders as might exist at the time of such distribution, in lieu of leaving it to the discretion of a future board of directors. In other words, the so-called "trust agreement" was, in effect, an agreement committing the corporation *to distribute dividends in the future.* The naming of the trustee was a mere convenience to make more certain the carrying into effect of the agreement.

In *Chase National Bank* v. *United States*, 278 U. S. 327, it was held that the right to borrow upon an insurance policy alone was an incident of ownership which prevented title to it passing while the insured lived. To the same effect was our holding in *Old Point National Bank, Executor, supra.* On authority of these decisions, and for the other reasons indicated above, we sustain the respondent on this issue.

Our holding on the issue just disposed of makes unnecessary a consideration of respondent's plea in estoppel, alternatively urged against petitioners' right to claim exemptions for the income items involved.

The remaining issue is common to Docket Nos. 91452 and 92621 only, and requires a determination of whether the taxable period to which the proceeds from the insurance policies distributed to the estate of Charles E. Golden should be attributed for income tax purposes is the period from January 1 to April 9, 1934, or from April 9 to December 31, 1934. The respondent in determining the deficiencies herein included the item in both periods, but concedes that it is properly includible in only one. Section 42 of the Revenue Act of 1934 provides:

* * * In the case of the death of a taxpayer there shall be included in computing net income for the *taxable period in which falls the date of his death,* amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period. [Italics supplied.]

The petitioners contend that the distribution accrued to the estate coincident with Golden's death and therefore, is includible in the first period. The respondent agrees with the petitioners. We hold that the item belongs to the latter period and not to the former. The distribution of money which Golden's estate received was not received as proceeds of insurance, but as a dividend from the corporation. Such dividend had not accrued up to the date of his death. The "trust

agreement" provided that the distribution to the stockholders of the corporation should be made out of moneys derived from the proceeds of insurance and necessarily contemplated that such dividend distribution should be made only after such proceeds should be collected. The distribution in question was made on May 18, 1934.

Reviewed by the Board.

> *Decision in Docket No. 91452 will be entered under Rule 50. Decisions sustaining deficiencies in Docket Nos. 91451, 91453, and 92621 will be entered.*